# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| COMAR WHEELER, | |
| Petitioner, | No. 19 C 4274 |
| v. | Judge Thomas M. Durkin |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

**MEMORANDUM OPINION AND ORDER**

Comar Wheeler filed a petition pursuant to 28 U.S.C. § 2255. R. 1. A hearing is necessary before the Court can decide the petition.

**Background**

Wheeler was tried before a jury on a charge of being a felon in possession of a gun. He testified and admitted that the police caught him in possession of a gun. He explained his possession of the gun by testifying that he had been attacked and robbed by a group of teenagers, and after one of them dropped a gun, he picked it up for protection. According to Wheeler, he was fleeing this altercation when the police apprehended him.

During plea discussions before trial, the government sought to have Wheeler admit that he fired the gun, which would serve to enhance his Sentencing Guidelines range. Wheeler refused, so the government offered Wheeler a Guidelines plea with an "agree-to-disagree" clause regarding an enhancement for firing the gun. Wheeler

rejected this offer twice—once with his original counsel, and again with subsequent counsel.

Wheeler contends that his second counsel told him that it was a "foregone conclusion that the [sentencing judge] would apply the enhancement if he accepted the plea agreement." R. 1 at 2. Wheeler also contends, however, that his counsel: (1) failed to explain to him that the government would have to prove that Wheeler fired the gun by a preponderance of the evidence; and (2) "never discussed the scant nature of the evidence proffered by the government to support the enhancement." R. 1 at 15. Wheeler argues that in light of the standard of proof and the "scant" evidence, it was unlikely that the judge would apply the enhancement. As it happened, the sentencing judge did not apply the enhancement. Wheeler claims that if his counsel had properly advised him about the likelihood the sentencing judge would apply the enhancement, he would have taken the plea deal instead of going to trial. And if he had pled guilty, his Guidelines range would have been lower because he likely would have received acceptance of responsibility points. Wheeler concludes that with a lower Guidelines range his sentence would have been shorter, so he was prejudiced by his attorney's advice.

**Analysis**

To succeed on a claim of ineffective assistance of counsel with regard to a plea offer, the petitioner "must show that his counsel's advice to reject the plea agreement and go to trial was objectively unreasonable." *Torres-Chavez v. United States*, 828 F.3d 582, 585 (7th Cir. 2016); *see also Mitchell v. United States*, 846 F.3d 937, 940

(7th Cir. 2017) (assuming without deciding that counsel must "convey a plea offer 'effectively'"); *United States v. Scribner*, 832 F.3d 252, 258 (5th Cir. 2016) ("[W]hen considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. And [w]here a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance."); *Lechuga v. United States*, 15 F. Supp. 3d 788 (N.D. Ill. 2014) (ordering an evidentiary hearing because defense counsel failed to properly advise the defendant of his potential sentence during plea negotiations).

The government does not expressly argue that Wheeler's counsel's alleged failure to explain the applicable burden of proof and the extent of the evidence was objectively reasonable advice. Instead the government argues that Wheeler's allegations amount to an "attack on his attorney's prediction that Wheeler would not prevail on the agree-to-disagree clause." R. 11 at 10. And "[a]n inaccurate sentencing prediction alone is not deficient performance." *Id.* (citing *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000)). But in *Bridgeman*, the Seventh Circuit explained that counsel's miscalculation of the guideline range "could never suffice to demonstrate deficient performance *unless* the inaccurate advice resulted from the attorney's failure to undertake a good-faith analysis of all the relevant facts and applicable legal principles." 229 F.3d at 592 (emphasis added). That is just what Wheeler claims. He alleges that his counsel did not make a reasonable analysis of the relevant facts and standard of proof in advising him regarding the plea deal. The

government does not argue that it was reasonable for counsel to fail to explain the burden of proof and the relevant evidence to his client.

Faced with allegedly objectively unreasonable conduct, the government argues instead that Wheeler's second counsel was under no obligation to restart plea negotiations. But the government does not dispute that Wheeler's counsel did in fact engage Wheeler on plea negotiations. Indeed, that's how the bad advice allegedly was given. And in any event, for purposes of this motion the Court assumes that Wheeler and his counsel discussed whether Wheeler should plea.

The question then, which the government focuses on, is whether Wheeler was prejudiced by his counsel's advice. That is, whether there is a "reasonable probability" that the outcome of Wheeler's case would have been different if he had received appropriate advice from his lawyer. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). And in the context of advice about a plea agreement, this means whether with proper advice, the defendant would have taken the plea. *See Foster v. United States*, 735 F.3d 561, 566 (7th Cir. 2013) ("To succeed on a claim that counsel's ineffective assistance led him to reject the Government's plea offers, [the petitioner] must show not only that [his attorney] acted in error, but also that—had [the attorney] provided competent advice—there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted it, and that the conviction or sentence or both would have been less severe than the judgment imposed.").

The government argues that Wheeler would not have taken the plea because he wanted to go to trial to tell his "side of the story," as he stated at his sentencing hearing. But Wheeler alleges that he went to trial to tell his side of the story because his counsel allegedly told him it was a "foregone conclusion" that the sentencing judge would not listen to his side of the story and would find he had fired the gun. Having been told that the sentencing judge would not believe his story, Wheeler decided to try his luck with twelve jurors.

Further, the government assumes that Wheeler's "side of the story" concerned the fact that he possessed the gun under duress, a defense presented at trial. Since his counsel's allegedly bad advice did not concern this aspect of Wheeler's case, the government argues it cannot have changed the outcome of the case. But if Wheeler's allegations are true, his discussions with counsel went beyond the possession issue. Instead, Wheeler and his counsel were talking about whether the sentencing judge would impose the enhancement for firing the gun, not about whether Wheeler's possession was justified. If Wheeler was intent on vindication of his theory of duress, he would not have been discussing the enhancement for firing the gun. That enhancement was only relevant if Wheeler was considering conceding guilt on possession. Indeed, Wheeler's statement at sentencing, quoted by the government, focuses on his attorney's advice that the sentencing judge would apply the 4-level enhancement for firing the gun. *See* R. 11 at 4-5 ("Their side of the story was . . . I shot at some kids. That was not the truth. . . . [Y]ou're gonna sit here and tell me you're going to give me a four-point enhancement, . . . and you know I ain't do it, why

5

would I sign a document like that? . . . Then my lawyer is telling me a judge, they're going to find you guilty. . . . I never shot at nobody.").

Taking as true Wheeler's allegation of his attorney's deficient advice, Wheeler has also demonstrated prejudice. If he had taken the plea deal and the sentencing judge did not apply the four-point enhancement for firing the gun, Wheeler's offense level would have been 17, with a corresponding Guidelines range of 51-63 months. Instead, Wheeler was convicted at trial, and so did not receive a three-point acceptance of responsibility credit he likely would have received with a plea deal, making his offense level 20, with a Guidelines range of 70-87 months. The sentencing judge imposed a sentence in the middle of that range, 78 months. With an offense level of 17 and a range of 51-63, and assuming the sentencing judge again imposed a sentence in the middle of the range, Wheeler would have been sentenced to 57 months. In any event, even the high end of the range—63 months—was materially less than the sentence Wheeler received. There is a reasonably probability the Wheeler would have accepted the plea with proper advice, thus, he has demonstrated prejudice.

One might think that Wheeler was not prejudiced because Wheeler was sentenced with a lower offense level (20) than he understood he would have if he had pled guilty with the judge finding he had fired the gun (21). Wheeler had a base offense level of 20. By pleading, he likely would receive three points of credit for acceptance of responsibility, taking him down to 17. But if the judge found Wheeler had fired the gun, as Wheeler's attorney allegedly assured him would be the case,

four points would be added for a total of 21. Instead, Wheeler went to trial; the judge did not find that he fired the gun; and so Wheeler was sentenced based on an offense level of 20.

The analysis, however, is a mischaracterization of Wheeler's perspective. From Wheeler's perspective, when his attorney advised him that the judge's imposition of a four-point enhancement was a foregone conclusion, Wheeler's decision was between taking a plea at an offense level of 21 or risk losing at trial for an offense level of 24. Wheeler made the decision that the difference between 21 and 24 was not great enough to forego the chance of acquittal at trial.

But with proper advice, Wheeler would have understood that his best-case scenario was an offense level of 17. His worst-case scenario (loss at trial and the chance the judge might impose the four-point enhancement) remained an offense level of 24. That greater difference—between 17 and 24—meant Wheeler had much more to lose by going to trial. His attorney's bad advice prejudiced Wheeler because it deprived Wheeler of the opportunity to evaluate the plea agreement from this well-informed perspective.

**Conclusion**

A hearing is necessary to determine whether Wheeler's counsel did in fact fail to properly advise him about the burden of proof and the extent of the evidence as Wheeler alleges, and for the Court to assess Wheeler's credibility concerning his

intent to accept the "agree-to-disagree" plea. The Court will recruit an attorney to represent Wheeler at this hearing. A status hearing is set for March 25, 2020.

ENTERED:

_Thomas M Durkin_
Honorable Thomas M. Durkin
United States District Judge

Dated: March 9, 2020